Argued May 23, affirmed in part, reversed in part and remanded
September 6, 1978

HEWES, *Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,

*Respondent.*

(No. 75-3792, CA 9997)

583 P2d 576

Robert Udziela, Portland, argued the cause for petitioner. On the brief were Dan O'Leary and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Lester R. Huntsinger, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. On the brief were K. R. Maloney, Chief Counsel, James A. Blevins, Chief Trial Counsel, and J.

Marvin Benson, Associate Counsel, State Accident Insurance Fund, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

■ In this workers' compensation case there are two essential issues: whether claimant has established her claim for aggravation and whether she is entitled to penalties and attorney fees for unreasonable delay in denying her claim. The first issue is purely factual. We affirm the Workers' Compensation Board's denial of the claim for aggravation. *See Bowman v. Oregon Transfer Company,* 33 Or App 241, 576 P2d 27 (1978).

Respecting the issue of penalties and attorney fees, the relevant facts are that claimant sustained a compensable injury to her neck and upper back in 1969. Her claim was closed in 1970 with an award of five percent unscheduled disability. It was reopened in 1971 and closed in 1973 by a referee's award of 35 percent unscheduled disability. This was the last award of compensation prior to the present proceeding.

■ Dr. Cherry, one of claimant's treating physicians,[1] wrote to the State Accident Insurance Fund (Fund) on April 16, 1974. He summarized the results of his examination of claimant since the claim closure and concluded:

> "I would request that this lady's claim be reopened for further study. I would like to obtain neurological consultation for her and myelogram to determine whether or not she has a herniated invertebral disc at this time. I believe she has an aggravation to her previous condition."

This letter was sufficient for a claim of aggravation, pursuant to ORS 656.273(3).[2] The Fund responded, in a letter to Dr. Cherry, that it would be responsible for the medical evaluations, and said that reopening of the claim was not indicated but would be considered as soon as the results of the additional evaluations were available.

---

[1]She had also been treated by a psychiatrist relating to her injury.

[2]ORS 656.273(3) provides:

"A physician's report indicating a need for further medical services or additional compensation is a claim for aggravation."

[ 93 ]

The Fund received a copy of an additional medical report on January 22, 1975, from Dr. Smith. Dr. Cherry wrote to claimant's counsel on July 18, 1975, suggesting that the claim should be reopened for reevaluation as the result of aggravation of claimant's previous condition. On September 8, 1975, claimant's counsel filed a request for a hearing alleging inter alia that she was entitled to penalties and attorney fees and that the Fund had failed to commence compensation within 14 days. ORS 656.262(4). The Fund requested additional medical evaluation on September 11, 1975. The requested report was received on October 3, 1975. The Fund sent a letter to claimant denying the claim for aggravation on December 1, 1975, over one and one-half years after receipt of Dr. Cherry's letter indicating a claim for aggravation.

Claimant argues she was entitled to interim payments of compensation relating to her aggravation claim to begin within 14 days, and to a denial or acceptance of her claim within 60 days. Failure of the Fund to make the interim payments and the timely denial subjects the Fund to penalties and attorney fees, pursuant to ORS 656.262(8).

The Fund does not contend the denial was timely but argues the delay was not unreasonable for two reasons: first, that the medical aspects of the case were complex and the Fund had a legitimate doubt as to its liability, citing *Norgard v. Rawlinsons,* 30 Or App 999, 569 P2d 49 (1977); second, the Fund argues the record does not disclose that the letter from Dr. Cherry to claimant's attorney, written July 18, 1975, was ever transmitted to the Fund. It is also contended that claimant was not harmed by the delay since she was receiving compensation payments, as a result of the 1973 award, which would continue until July 1, 1976.

ORS 656.273(6) requires the Fund to commence interim compensation payments on an aggravation claim within 14 days after notice of claimant's inability to work due to worsening of her condition. Claimant

had not returned to any employment following her injury in 1969 and her claim for aggravation sought permanent total disability. She was entitled to receipt of the interim compensation or denial of the claim within 14 days of Dr. Cherry's letter of April 16, 1974.

■ On the issue of whether penalties and attorney fees are due for the delay in denying the claim, since the Fund does not contend it was timely, the question is whether it was unreasonable. The only explanation offered by the Fund is that the case is complex and it had a reasonable doubt as to liability for aggravation compensation.

In *Norgard* we held it was not unreasonable for the insurer to resist payment of medical expenses based on a Workers' Compensation Board's interpretation of the statute in a prior case. We stated that, as long as an insurer has a legitimate doubt, from a legal standpoint, of its liability, its conduct was not unreasonable. The liability, from a legal standpoint, to pay compensation for aggravation is beyond doubt. The only issue is whether the available evidence factually entitled the worker to aggravation compensation. We have reviewed the record in this case and do not find the medical aspects so complex that a delay of over one and one-half years would be justified. The Fund does not explain the legal problem it was struggling with for that period of time and, indeed, offers no explanation for the delay. We find as fact that it was not reasonable.

■■ The Fund asserts, without explanation, that the record does not indicate it received a copy of Dr. Cherry's letter to claimant's attorney, written July 18, 1975.[3] The implied argument is that the Fund did not have knowledge of a claim for aggravation. In light of Dr. Cherry's earlier letter of April 16, 1974, indicating a claim for aggravation, this argument is without merit. The Fund's responding letter to Dr. Cherry was

---

[3]The Board, also without explanation, denied penalties and attorney fees on this basis.

not dispositive of the claim and it was still a live claim until denied on December 1, 1975. ORS 656.262(5) requires written denial to the claimant, including advice respecting claimant's right to object and request a hearing.

The Fund's contention that claimant is not harmed by the delay in denying her claim is equally without merit. The Fund contends our decision in *Williams v. SAIF,* 31 Or App 1301, 572 P2d 658 (1977), requires the penalties be assessed only where claimant has financial difficulties from the delay. Since, it is argued, claimant was receiving compensation during the time the Fund was considering her aggravation claim, she was not harmed. However, *Williams v. SAIF, supra,* involved only delay in making the required interim payments, and we noted as a fact, not a legal requirement, that claimant was without any compensation for 39 days of his period of injury. The penalty for refusal or delay in paying interim compensation is to induce the insurer to provide interim economic support to the injured worker. The penalty for delay in denying the claim accomplishes another and separate purpose. The evident aim is to require the insurer to promptly deny the claim so the worker can seek an appeal and final determination of his compensation rights. The fact that a worker's economic plight is lessened does not authorize unreasonable delay in processing the claim. The Act requires prompt interim payments and prompt denial or acceptance—they are not alternate requirements.

The referee's decision on the denied claim awarded claimant 40 percent unscheduled disability. The Fund paid this award up to the time it was reversed by the Board. We remand to the Board for calculation of penalties and attorney fees.

Affirmed in part, reversed in part and remanded.