Argued January 15, affirmed in part; reversed
in part and remanded for further proceedings
April 2, 1979

SILSBY, *Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(WCB 77-5353, SAIF Claim No. WD 32814, CA 11827)
592 P2d 1074

Samuel A. Hall, Jr., Eugene, argued the cause and filed the brief for petitioner.

Earl Preston, Attorney, SAIF, argued the cause for respondent. On the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, SAIF, Salem.

Before Schwab, Chief Judge, Thornton, Lee and Gillette, Judges.

GILLETTE, J.

## GILLETTE, J.

This is a worker's compensation proceeding involving a claim for aggravation. Claimant appeals from an order of the Workers' Compensation Board ("Board") modifying the referee's award in the following respects: (1) changing the beginning date of compensation from May 19, 1977, to October 26, 1977; (2) denying claimant penalties awarded by the referee for SAIF's allegedly unreasonable denial of the claim and unreasonable refusal to pay compensation; and (3) reducing the amount of attorney's fees awarded by the referee from $1000 to $500. Respondent also appeals, arguing that the Board's allowance of the aggravation claim was improper. We modify the Board's order concerning the date upon which compensation was first due and concerning temporary total disability, but otherwise affirm.

A. Compensability of claimant's aggravation claim.

■ ORS 656.273(1) establishes the statutory standard for claims of aggravation as follows:

> "After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, *for worsened conditions resulting from the original injury.*" Emphasis added.

*See Johnson Lbr. Co. v. SAIF,* 20 Or App 419, 423, 532 P2d 38 (1975).

A comparison of the claimant's records immediately following his compensable injury of July 15, 1974, with his most recent medical records indicates that claimant's pain has substantially worsened. This worsening is corroborated by the physical deterioration shown by objective findings. Dr. Robertson's July 16, 1974, medical report diagnosed "Degenerative disc diseas, especially at the L3-L4 level" and "Acute lumbar sprain." Claimant's symptoms were "low back pain with radiation to the left thigh" and "muscle spasm and rigid lumbar lordosis." Subsequent to this

report, the Board closed the claim by a November 4, 1974, Determination Order awarding claimant temporary total disability from July 15, 1974, through August 11, 1974. A medical report dated August 7, 1975, by Dr. Serbu stated that claimant had developed "some right hip discomfort," but that "He claims he does not hurt too overly much." Dr. Serbu added that "His leg pain really has been rather minimal." The doctor's impression was that "it was possible this man may have a very mildly bulging lumbar disc." He also noted, "The x-rays do show considerable narrowing at L3-4. There is anterior osteophyte formation and this is obviously rather longstanding." Dr. Serbu noted that it was questionable whether claimant was in sufficient pain to warrant myelography, since "diagnostic tests on his back should only be done if the patient were hurting enough to proceed with further therapeutic measures, should the diagnostic tests be positive." This report indicates that claimant's condition had deteriorated slightly.

Later reports by Dr. Fellows and Dr. Hayne indicate substantial deterioration in claimant's condition. Dr. Fellows' report, dated March 16, 1977, states that claimant was suffering from "radiation of pain around the right groin into the right scrotum and testicle," and "had some cramping sensations in the back of the right knee and throughout the right knee." A lumbar myelogram revealed "a small central midline disc at L4-5 without much lateral compresssion." This was the first mention in the medical reports of any of these problems. Dr. Hayne corroborated Dr. Fellows's report, and added the diagnosis, "Herniated lumbar disc, 4th lumbar, midline, suspected but not proven." Neither report, however, indicated whether claimant's new condition was related to his previous injury.

Claimant's most persuasive evidence supporting his aggravation claim is the October 26, 1977, report of Dr. Stainsby. After reciting claimant's medical history and the increased pain suffered by claimant, corroborating the reports of Dr. Fellows and Dr. Hayne, the doctor stated:

[558]

> "I do feel that this present complaints are a result of his injury which occurred in July of 1974. The patient had no difficulty prior to that time. An injury to the lumbar back may set off a chain of events when the patient already has some degeneration of his lumbar discs. This is not an unusual occurance [sic]. *The patient's present symptoms are on the basis of an aggravation of his degenerative disc disease and this aggravation was and is due to the injuries of July 1974.*"(Emphasis added).

The quoted statement supplied the theretofore-missing express medical opinion that the later symptoms were causally related to the compensable industrial injury.

Respondent argues that several items in the record demonstrate that claimant's deteriorated medical condition is due to an intervening injury and thus does not meet the legal standard for aggravation.

A medical report by Dr. Robertson dated August 18, 1975, stated the following:

> "Mr. Silsby reinjured his back in April of 1975. He states that he had a flare up of his back pain and was unable to work the Tuesday prior to my examination of April 25, 1975. He stated the pain was quite similar to that experienced last year and was brought on by using a Tommy bar and a long wrench on a stubborn bolt at work."

Claimant testified that he did not feel he had an "accident" on that particular occasion. He had been seeing Dr. Robertson periodically, and testified that "when my back got to the point that it was giving me a lot of trouble I would go see him." The referee expressly found claimant to be a credible witness. Dr. Robertson also ascribed no independent significance to this event, stating, "It is my feeling that Mr. Silsby's problem at the present time is a reaggravation of his present injury, which was also work-related." The referee and Board properly rejected respondent's argument on this point.

[559]

Respondent also argues that claimant's work on his farm should be considered "microtraumas" amounting to separate intervening injuries. Claimant testified to shoveling 10-to-15 pound shovelfuls of silage into a pickup, rolling bales of hay down off the top of a stack onto the pickup, cutting wood with the aid of a friend using a buzz saw, feeding and watering cattle, and other farm activities, all of which tend to make his back sore for a period of time. The referee's characterization of these effects as "transitory adverse physical response" not of independent significance is appropriate.

We agree with the referee and the Board that claimant has demonstrated that his worsened condition and his medical expenses were a result of his prior compensable injury.

B. From what date was the claim compensable?

The referee held that the claim of aggravation was compensable during the period starting May 19, 1977, the date of claimant's letter to SAIF requesting the reopening of his claim for aggravation. The Board held that the period of compensation began October 26, 1977, the date Dr. Stainsby's letter provided the first express medical verification of aggravation of claimant's compensable industrial injury.

The only statute expressly governing the time of payment for aggravation is ORS 656.273(6), which provides:

> "A claim submitted in accordance with this section shall be processed by the direct responsibility employer or the State Accident Insurance Fund in accordance with the provisions of ORS 656.262, *except that the first instalment of compensation due under subsection (4) of ORS 656.262 shall be paid no later than the 14th day after the subject employer has notice or knowledge of medically verified inability to work resulting from the worsened condition.*" (Emphasis added.)

The question raised here is whether the date of medical verification relates only to the date the first payment is due (a "procedural" matter) or to the period during which the claim is *compensable* (a "substantive" matter). Other express statutory language suggests that the former interpretation is proper.

ORS 656.273(1), *supra,* provides, *inter alia,* "an injured worker is entitled to additional compensation * * * for worsened conditions resulting from the original injury." This language seems consistent with the general approach of the workers' compensation law as to temporary total disability, which is to pay compensation "during the period of that * * * disability." ORS 656.210. (ORS 656.206(2), governing permanent total disability, contains similar language). Nothing in ORS 656.273(6) purports to change that rule. Payment of temporary total disability on an original claim is also subject to a 14-day delay after filing of the claim under ORS 656.262(4), which provides in pertinent part:

> "The first instalment of compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim."

The existence of this 14-day period measured from notice or knowledge of the claim does not affect the substantive period of compensability; the worker still receives compensation covering the entire period of the disability, subject in some cases to a 3-day "waiting period." *See* ORS 656.210.(3). There is no reason to hold that the time of medical verification in ORS 656.273(6) requires a different result, especially in light of the express reference in ORS 656.273(6) to ORS 656.262(4).

In *Hewes v. SAIF,* 36 Or App 91, 94, 583 P2d 576 (1978), we stated, "ORS 656.273(6) requires the Fund to commence interim compensation payments on an aggravation claim within 14 days after notice of claimant's inability to work due to worsening of her condition." In discussing the penalty provisions of ORS 656.262(8), we said, "The penalty for refusal or delay

[561]

in paying interim compensation is to induce the insurer to provide interim economic support to the injured worker." 36 Or App at 96. Thus, the apparent intent of ORS 656.273(6), combined with the penalty provisions, is not to establish the substantive rights of the claimant to compensability as of a certain date, but to insure prompt payments of interim support to a worker who has filed a claim for aggravation, pending final determination of compensability of the claim. *See also Jones v. Emanuel Hospital,* 280 Or 147, 570 P2d 70 (1977).

■ As we interpret the statute, the claim for increased disability due to aggravation is compensable during the period of that increased disability, although the first payment of compensation would not be due until 14 days following receipt of verification. We therefore hold that ORS 656.273(6) is procedural, *i.e.,* that it relates to when compensation payments must actually be made, not to what period of time the payments must cover.

■ Having stated what the statute means, we now apply it to the facts. On the fact, we note a startling disparity between what petitioner *claims* and what he has *proved,* both with respect to disability payments and medical payments.

As to disability, claimant's evidence was that he was totally off the job only in connection with his myelogram in March, 1977. However, he makes no claim for disability payments prior to May 19, 1977. It follows that the Board's order granting temporary total disability is in error, inasmuch as there is no proof of such disability for any period during which claimant was eligible to receive it.

As to medical payments, there is once again proof as to medical expenses prior to May 19, 1977, but no claim for them. Since, however, it appears likely that the medical expenses have been paid and SAIF has not separately challenged the appropriateness of the referee's awarding them we merely note this anomaly for the Board's and the parties' consideration on remand.

[562]

## C. Is claimant entitled to penalties?

In an aggravation claim SAIF has the duty to pay interim compensation "no later than the 14th day after * * * notice or knowledge of medically verified inability to work resulting from the worsened condition." ORS 656.273(6). An insurance carrier's payment of prompt interim compensation is induced by the availability of penalties under ORS 656.262(8), which provides:

> "If the fund or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the fund or direct responsibility employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

In *Jones v. Emanuel Hospital, supra,* the court held that this provision applies to an unreasonable failure to pay interim compensation. The issue here is whether SAIF unreasonably failed to make interim payments to claimant based on the medical reports of Dr. Fellows and Dr. Hayne. We hold that it did not.

██ As previously noted, no "medical verification" of a link between claimant's present complaints and his earlier compensable injury had been supplied until Doctor Stainsby's letter of October 26, 1977. By that time the claim had already been denied. We hold that the triggering event for the purpose of awarding penalties for failure to accept, deny or pay interim compensation for an alleged aggravation is the receipt of "medical verification" as contemplated in ORS 656.273(6). Usually, verification need go no further than to state that there is a worsened condition arising out of the original injury or disease. Unless such verification flies in the face of other evidence sufficient to make the verification inherently incredible, the carrier's duty to pay commences and failure to pay (or deny the claim) will expose the carrier to the possibility of penalties after 14 days.

D.  Was the Board's award of attorney fees adequate?

■  The attorney who represented claimant at the hearing filed an affidavit stating essentially that (1) he ws experienced in workers' compensation matters, had developed some expertise, and could handle such matters efficiently with a relatively small investment of time; (2) he had "logged at least 6.3 hours on this case," which at a rate of $75 per hour amounts to $472.50; and (3) due to the contingency fee nature of such cases a reasonable fee is $1,000. The referee awarded him that amount. The Board, finding the higher fee excessive in light of the length of the hearing and the amount of time put in by counsel, reduced this award to $500. The Board's award appears reasonable, and we defer to it in view of the fact that the Board deals with these matters every day and thus may be expected to make a consistent and knowledgable assessment of the effort involved.

Affirmed in part; reversed and remanded in part.