In the Matter of the Compensation
of Geraldine Moore, Claimant.

MOORE,
*Petitioner,*

*v.*

COMMODORE CORP. et al,
*Respondents.*

(WCB. Nos. 79-11,081, 80-221, CA A20410)

638 P2d 491

Alice Goldstein, Portland, argued the cause for petitioner. With her on the brief was Welch, Bruun & Green, Portland.

Samuel R. Blair, Salem, argued the cause for respondent Truckers Insurance Co. With him on the brief was Blair & McDonald.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent Insurance Company of North America. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

No appearance by respondent Commodore Corp.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Claimant appeals an order of the Workers' Compensation Board (Board) affirming the referee's order which affirmed the denials issued by Truckers Insurance Company (Truckers) and Insurance Company of North America (INA) and affirmed the determination order of January 17, 1979, whereby claimant was awarded 7.5 degrees for 15 percent permanent partial disability compensation for loss of use of her right forearm. Claimant contends she has suffered either an aggravation arising from her right forearm injury or a new injury to her right shoulder, that the award is inadequate and should include the shoulder condition, and that she is entitled to interim compensation, penalties and attorney fees.

In February, 1977, Commodore Corporation employed claimant in a job requiring use of a powered staple gun and heavy, repetitive lifting. In April, 1978, she filed a claim form complaining of "Sharp continual pain and aching in right elbow, wrist and if use arm it aggravates right shoulder," and that month she was treated for medial epicondylitis of the right arm, which Dr. Wimmer "felt to be work related."

In May, 1978, Dr. Fleshman, an orthopedist, performed a carpal tunnel release on claimant's right forearm. After she complained of pain in her shoulder, Dr. Fleshman advised her that the carpal tunnel release should help the shoulder.

Claimant returned to work in August, 1978, but continued to experience pain and swelling in the right shoulder. In October, 1978, she went back to Dr. Fleshman, still complaining of pain in her right shoulder, which he diagnosed as acute tendonitis. In December, 1978, Dr. Fleshman conducted a closing examination and found that her condition had returned to normal status. That same month she was transferred to a new position demanding repetitive overhead stapling and heavy lifting. In January, 1979, a determination order was issued awarding her compensation equal to 7.5 degrees for 5 percent loss of the right forearm.

On July 1, 1979, Commodore Corporation changed insurance carriers from Truckers to INA.

During the summer months, claimant's work load increased to "six days a week, ten, twelve hour days." By October, 1979, she could no longer work because of severe pain, swelling and weakness in her right shoulder and pain and weakness in her right wrist and forearm. In November, 1979, she again visited Dr. Wimmer. She testified that he treated her for the flu, that he was aware of her arm and shoulder problems and that he referred her back to Dr. Fleshman. In November, 1979, claimant filed a second claim with her employer. INA, the employer's then insurer, denied the claim on the ground that claimant had suffered an aggravation of her April, 1978, condition rather than a new injury. A copy of the denial letter was forwarded to Truckers, which denied responsibility, contending that claimant had suffered a new injury rather than an aggravation of her 1978 injury.

■　　The first issue is whether claimant has proved by a preponderance of the evidence the compensability of her November, 1979, claim. We find that she has. She has experienced problems with her right shoulder since April, 1978. Her problems are consistent with her work requirements. In May, 1978, Dr. Fleshman wrote:

> "[Claimant's work] requires her to lift and carry sheets of veneer and synthetic paneling of various weights and to do heavy manipulation, and then to fasten these panels in place with a high power air staple gun * * * . Her symptoms actually did not begin on a particular date, but gradually over a period of time and as her own participation in the work became greater * * * , the symptoms became worse. These consist basically of loss of sensation in the right hand, with pain and tingling in the hand and in the arm."

In April, 1978, claimant complained to Dr. Nelson that "* * * if use arm it aggravates right shoulder." Dr. Fleshman told claimant that he thought he could relieve the pain in her shoulder by performing the carpal tunnel release. That surgery did not totally relieve the condition, and over a period of two years it became worse. The referee found no medical evidence establishing that a shoulder injury occurred in April, 1978. Although we find that claimant's medical problems in April, 1978, primarily involved her right arm, we find sufficient evidence that she also experienced a work-related shoulder injury. After the carpal

tunnel surgery, while claimant continued to experience some pain in her wrist and arm, her primary problem became increasing pain in her shoulder. When she returned to work in August, 1978, she had to take aspirin daily to endure the shoulder pain. In October, 1978, when she returned to Dr. Fleshman, he noted:

> "Claimant comes at the time we expected to do her closing exam, but in the interim, she has been sparing the arm, because of an acute tendonitis of the same shoulder. * * *"

Later, Dr. Fleshman concluded:

> "Thus, you see, that on 10-23-78, we did in fact record an attack of acute tendonitis of the right shoulder which she felt was occasioned by the door hanging occupation.
>
> "She was not again seen for the shoulder until 10-23-79, but that was on referral from Dr. Wimmer, with a history of 3-4 weeks of difficulty. It would seem then, that INA's contention is correct, that the shoulder problem did appear during the autumn months of 1978."

In January, 1980, Dr. Fleshman reported that claimant had complained of recurrent shoulder pain in October and November, 1979, "* * * 13 months after she first complained of shoulder pain," and the record shows that she had complained to her doctors about her shoulder since April, 1978.

■ ■ The second issue is whether claimant's condition is an aggravation of her earlier injury or a new injury. We conclude that claimant's 1979 shoulder condition was a compensable aggravation of her April, 1978, condition[1] and remand to the Board to determine the extent of claimant's disability.

■ Claimant next contends that she is entitled to interim compensation because Truckers untimely denied the claim. In an aggravation claim the insurer has the duty

---

[1] The referee also denied the claim because "pain is not an injury or condition." Although that is literally correct, the disabling effect of pain may be considered in determining the effect of any injury. *Walker v. Compensation Department,* 248 Or 195, 196, 432 P2d 1018 (1967); *Wilson v. State Ind. Acc. Comm.,* 189 Or 114, 124, 219 P2d 138 (1950). Here, the pain syndrome is compensable. The medical reports variously diagnose her condition as tendonitis, biceps long head proximal tendon synovitis, and nerve lesion. Even though there is no precise anatomic diagnosis, the medical reports clearly establish an injury.

to pay interim compensation "* * * no later than the 14th day after * * * notice or knowledge of medically verified inability to work resulting from the worsened condition." ORS 656.272(6). In *Silsby v. SAIF,* 39 Or App 555, 563, 592 P2d 1074 (1979), we held that verification need go no further than to state that a worsened condition exists arising out of the original injury or disease. The issue is whether the letters Dr. Fleshman sent to Truckers constituted medical verification of claimant's worsened condition.

In his January, 1980, letter, Dr. Fleshman reviewed claimant's medical history, including the carpal tunnel release and her later problems with her right arm and shoulder. He also noted "* * * that on 10-23-78, we did in fact record an attack of acute tendonitis of the right shoulder which she felt was occasioned by the door hanging occupation." He also stated that she was then unable to work, although he expected she would recover. This letter constituted sufficient verification of claimant's condition, because it gave Truckers notice that the present shoulder problems first occurred while Truckers was still on the risk.

Claimant also contends she is entitled to penalties and attorney fees, because Truckers did not accept or deny her claim within 60 days of her employer receiving notice of her claim. ORS 656.262(5). Claimant filed a claim form with her employer on November 13, 1979. Truckers did not deny her claim until March, 1980. The referee found that the aggravation claim was not "perfected" until March 14, 1980, when claimant's attorney sent Truckers a letter requesting that the claim be reopened on the basis of aggravation.

■ The statute governing compensation for aggravation claims provides:

"(2) To obtain additional medical services or disability compensation, the injured worker must file a claim for aggravation with the State Accident Insurance Fund Corporation or the direct responsibility employer. * * *" ORS 656.273(2).

Here, claimant satisfied her statutory duty by filing the claim with her employer. After the claim was filed, the

duty shifted to her employer to notify its carriers who might be liable on the claim or incur the penalties mandated by ORS 656.262(8).[2] The policy underlying the penalty provisions is to insure that claims are promptly resolved. *Hewes v. SAIF*, 36 Or App 91, 96, 583 P2d 576 (1978); *see Silsby v. SAIF, supra*, 39 Or App at 562. Here, more than 60 days elapsed after claimant had filed her claim. Therefore, claimant is entitled to penalties and attorney fees.

Reversed and remanded for a determination of the extent of claimant's disability, and for award of interim compensation, penalties and attorney fees.

---

[2] ORS 656.262(8) provides:

"If the fund or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the fund or direct responsiblity employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."