Argued April 1; affirmed April 20, 1948

# LINDEMAN, *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

192 P. (2d) 732

*Ben Anderson* argued the cause for appellant. On the brief were Lord, Anderson & Franklin, of Portland.

*Roy K. Terry,* Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief were George Neuner, Attorney General, and T. W. Gillard and Samuel A. Hall, Assistant Attorneys General, all of Salem.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, BAILEY and BRAND, Justices.

BAILEY, J.

Plaintiff, William Lindeman, on or about March 4, 1946, filed with the State Industrial Accident Commission of the State of Oregon an "Accident Claim" in which he stated that on February 25, 1946, while he was employed by the Commercial Iron Works in Portland, Oregon, he had an accident, caused by a plank which fell "from 12 feet above and struck me on back between shoulders and on head", that the part of his body injured was "between shoulders and back of head", that he was able to work, and that he would lose no time from work because of the accident. This application contained a statement by the safety engineer of the Commercial Iron Works to the effect that that company was a contributor to the accident commission, and also one by the attending physician that the injury was not serious enough to prevent claimant from working, and that no time was lost by him. The commission, on March 8, 1946, entered an order in reference to the foregoing claim reading as follows: "It appearing that the claimant did not lose time or wages by reason of the accidental injury, it is ordered that the claim be allowed only for the payment of all necessary medical care." No objection was made by Lindeman to this order.

On September 11, 1946, Lindeman filed with the accident commission a petition "for increased com-

pensation on account of aggravation'' in which, after describing the accident of February 25, 1946, and referring to the action taken by the commission on March 8, 1946, in relation thereto, he stated that ''since the 8th day of March, 1946 claimant's condition became aggravated in that the condition of his back became worse and it was necessary for claimant to submit to surgery and to lose further time from his work; that claimant's condition is not stationary and claimant is wholly unable to carry on any gainful employment; that said disability is of a permanent character and is total in extent and in any event is not less than 96 degrees permanent partial.'' The commission, on October 11, 1946, made a finding that ''there has been no aggravation of claimant's condition resulting from injury suffered February 25, 1946'', denied his petition for increased compensation and confirmed the former order of March 8, 1946. Plaintiff then filed a petition for rehearing, and upon the denial thereof this action was instituted.

At the close of plaintiff's case in chief defendant moved for judgment of involuntary nonsuit on the ground that the closing order (March 8, 1946) upon which plaintiff is relying was not, based upon the case of *Gerber v. State Industrial Accident Commission,* 164 Or. 353, 101 P. (2d) 416, an ''award of compensation within the meaning of the statute,'' and therefore was not referable to applications for increased compensation for aggravation. This motion was allowed and from the judgment entered thereon plaintiff has appealed.

Section 102-1771 (c), as amended by § 1, chapter 381, Oregon Laws 1945, reads in part as follows:

''If subsequent to the last award or arrangement of compensation by the commission there has been

an aggravation of the disability resulting from an accidental injury, the injured workman may file with the commission an application for increased compensation, which application shall set forth sufficient facts to show an aggravation in such disability and the degree thereof. An application for increased compensation for aggravation must be filed within two years from the date of the first final award of compensation to the claimant. * * *''

The statute in effect at the time of the decision in the Gerber case is set forth in the opinion in that case. It did not differ from the present law except that the application for increased compensation was required to be filed within one year instead of two. The relevant facts in that case are briefly as follows: Gerber, on January 27, 1937, sustained an accidental injury and a few days later filed a claim with the State Industrial Accident Commission for compensation. On February 16, 1937, the commission found that he ''had not suffered any disability on account of his accidental injury'' and entered a final order closing the case, but allowed ''payment for medical services.'' That order was, in effect, the same as the order issued by the commission on March 8, 1946, in the case at bar. In the Gerber case, however, the claimant was not satisfied with the order entered on February 16, 1937, and filed, within the time provided by law, a petition for rehearing. The commission allowed the petition and reopened the claim for payment of compensation for temporary total disability. A final order was made by the commission on December 4, 1937, closing the claim as of July 30, 1937, and awarding compensation for permanent partial disability. Gerber, on February 25, 1938, filed an application for increased compensation based upon aggravation of disability. This claim for increased compensation was resisted by the com-

mission on the ground that it had not been filed within one year from the date of the commission's first order, to wit, February 16, 1937, closing the case. It was there argued by counsel for the commission that that order was the "first final award of compensation to the claimant". We, however, rejected the commission's contention and held that the allowance of payment for medical services was "not an award of compensation within the meaning of the statute", that the "first *final* award of compensation was made on December 4, 1937", and that the application for increased compensation was filed within the time provided by law.

Plaintiff relies on the provisions of the excerpt hereinbefore quoted from § 102-1771 (c), *supra,* as authority for the right to maintain this action. He has filed an application for "increased compensation" for aggravation of the disability resulting from an accidental injury. He asserts that such aggravation was "subsequent to the last award or arrangement of compensation by the commission" and that "the first final award of compensation to the claimant" was on March 8, 1946, when the commission allowed "the payment of all necessary medical care" for plaintiff. An application for "increased compensation" for aggravation of the disability resulting from an accidental injury cannot be filed until after the commission has made an award of compensation for the workman's disability.

The Oregon Workmen's Compensation Act provides primarily for three types of compensation to be paid to employees covered by the act (or to their beneficiaries or dependents in case of death) for injuries arising out of and in the course of their employment. They are:

(1) Compensation for disability, dependent as to amount upon whether the injury produces a permanent

total, a temporary total, or a temporary partial disability. §§ 102-1756, 102-1758, and 102-1759, O. C. L. A.

(2) Compensation in stipulated amounts for loss of some part of the body, such as an arm, a leg, or an eye, and "other cases of injury resulting in permanent partial disability". § 102-1760, O. C. L. A.

(3) Compensation for death. § 102-1755, 102-1757, and 102-1761, O. C. L. A.

■ The statute provides no compensation for physical pain or discomfort. It is limited to the loss of earning ability. The loss of capacity to earn is the basis upon which compensation should be based. *Weber v. American Silk Spinning Co.*, 38 R. I. 309, 95 A. 603, Ann. Cas. 1917E 153; *Gillen v. Ocean Accident & Guarantee Corp.*, 215 Mass. 96, 102 N. E. 346, L. R. A. 1916A 371.

Section 102-1752, O. C. L. A., as amended by chapter 61, Oregon Laws 1947, provides in part as follows: "Every workman subject to this act while employed by an employer subject to this act who, while so employed, sustains personal injury, * * * by accident arising out of and in the course of his employment *and resulting in his disability,* or the beneficiaries * * * in case the injury results in death, shall be entitled to receive from the industrial accident fund thereby created the sum or sums hereinafter specified". It is provided in § 102-1754, O. C. L. A., that if any workman covered by the provisions of the act "shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he or his beneficiaries or dependents, if the injury result in death, *shall receive compensation as hereinafter provided.*" (Emphasis supplied.)

*Marshall v. Pletz,* 317 U. S. 383, 63 S. Ct. 284, 87 L. Ed. 348, involved the construction of the word "com-

pensation'' as used in the Longshoremen's and Harbor Workers' Compensation Act. Pletz, a longshoreman and maritime worker, was injured November 12, 1935. He filed a claim before the petitioner Marshall, a deputy commissioner, April 20, 1937. The Fireman's Fund Insurance Company, which insured the employer against liability arising under the Act, appeared at the first hearing set by the deputy commissioner and objected that the claim was untimely filed.

Section 13 (a) of that act provides in part as follows: ''The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury, * * * except that if payment of compensation has been made without an award on account of such injury * * * a claim may be filed within one year after the date of the last payment''.

It was contended by Pletz that ''the furnishing of medical care to'' him ''up to a time well within a year of the presentation of his claim was payment of compensation within the meaning of § 13 (a).'' The court did not so construe the act. In arriving at the conclusion that ''the furnishing of medical aid is not the 'payment of compensation' mentioned in § 13 (a)'' the court referred to the fact that ''compensation'' was defined to mean ''the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided therein.'' The opinion then proceeds as follows:

> ''Section 6 provides '(a) No compensation shall be allowed for the first seven days of the disability, except the benefits provided for in § 7 of this chapter.' The benefits covered in § 7 are the medical services which the employer is bound to furnish, but that section significantly provides that, if the

employe refuses to submit to medical treatment, the deputy commissioner may, by order, 'suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension, unless the circumstances justified the refusal.' Here compensation is contrasted with medical aid.

"Section 8 is entitled 'Compensation for disability.' The section deals solely with money compensation.

"Section 10 states that, 'except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation . . .'

"Section 14 deals throughout with what it terms 'compensation.' All of its provisions have to do with the periodic money payments to be made to the injured employe and make no reference to medical care.

\* \* \* \* \*

"In the light of all the provisions of the Act, we are persuaded that the terms 'payment' and 'compensation' used in § 13 (a) refer to the periodic money payments to be made to the employe."

The Oregon Workmen's Compensation Act contains many provisions similar to those referred to in the above quotation. For instance, § 102-1772, O. C. L. A., provides that if a workman shall refuse to submit to such medical or surgical treatment as the commission deems reasonably essential to promote his recovery "his right to compensation shall be suspended and no payment shall be made for such period, and the commission may reduce the period during which such workman would otherwise be entitled to compensation to such an extent as they shall determine his disability shall have been increased by such refusal."

All the numerous sections of the act which refer to compensation deal solely with money compensation and all, or practically all, of them "have to do with the periodic money payments to be made" to the injured employee, or his beneficiaries or dependents. Under § 102-1758, O. C. L. A., the compensation payable to the injured workman is a percentage of his wages. For permanent partial disability the workman is paid a fixed sum of money "for each degree stated against such disability as follows:   *   *   *" § 102-1760, O. C. L. A.

In *Industrial Commission of Colorado v. Globe Indemnity Co.*, 74 Colo. 52, 218 P. 910, relied on by plaintiff, the court held that payment by the employer of "certain hospital, surgical, and medical expenses of the claimant" was "payment of compensation" within the meaning of the Colorado Workmen's Compensation Act. (Colo. Laws of 1915, p. 515). The opinion of the court stated that "compensation" was so used in § 57 (1) of that act. We quote from that section: "If there be no dependents, the compensation shall be limited to the expenses provided for medical, hospital and funeral of deceased, together with such sums as deceased may have been paid for disability." The court further said: "This conclusion is strengthened by the fact that the Act of 1919, C. L. § 4458, expressly excepts such expenses and certain others from the payments of compensation which will prevent the bar." The section last referred to by the court is § 84 of chapter 210, Session Laws of Colorado, 1919, and, so far as relevant, is:

"   *   *   * provided, however, that if no payment of compensation has been made, other than medical, funeral, surgical, nursing, dental and hospital services, crutches, apparatus and supplies, such notice

or claim must be filed within one year from the date of the accident or if death result therefrom within one year after such death, or the right to compensation therefor shall be wholly barred; * * *"

In view of the difference in the wording of the Oregon and Colorado statutes, the Globe Indemnity Company case does not assist us in the determination of the question before use.

■■ We see no reason why we should overrule the Gerber case. It was decided after a thorough consideration of the identical question here presented. Since the decision in that case in 1940, there have been four sessions of the legislature and the only change made in § 102-1771 (c) was to enlarge, in 1945, the time in which to file an application for increased compensation for aggravation from one to two years. It may be presumed that the legislature re-enacted this section with knowledge of the ruling in the Gerber case, and that when it embodied in the 1945 enactment the precise words of the statute which had been construed in the Gerber case it intended to adopt the construction which had been placed thereon by the court in that case. *Overland v. Jackson,* 128 Or. 455, 275 P. 21; 50 Am. Jur., Statutes, 461, § 442.

The circuit court in our opinion did not commit error in granting defendant's motion for judgment of involuntary nonsuit.

The judgment appealed from is therefore affirmed.