Argued April 18; affirmed as modified May 23, 1950

# WILSON *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

219 P. (2d) 138

*Roy K. Terry,* Assistant Attorney General, argued the cause for appellant. With him on the brief were George Neuner, Attorney General, T. Walter Gillard and Ray H. Lafky, Assistant Attorneys General, all of Salem.

*Wesley A. Franklin* argued the cause for respondent. On the brief were Anderson & Franklin, of Portland.

Before Brand, Acting Chief Justice, and Belt, Rossman, Bailey, Hay and Latourette, Justices.

## LATOURETTE, J.

This is an appeal by the State Industrial Accident Commission from a judgment awarding the plaintiff permanent partial disability because of the loss of the sight of his left eye, occasioned by aggravation. Plaintiff suffered an injury to his left eye on April 24, 1947, while employed, subject to the provisions of the Workmen's Compensation Act. The plaintiff filed his claim for compensation with the Commission, which claim was approved and allowed, and plaintiff was granted an award for total temporary disability, and thereupon, the Commission closed plaintiff's case on July 24, 1947.

On October 26, 1948, plaintiff filed his petition for increased compensation because of aggravation, claiming an award of permanent partial disability equal to the complete loss of the sight of his left eye, and also an award of permanent partial disability because of chronic pain and nervousness equal to 96 degrees. The Commission denied plaintiff's petition; hence, the appeal to the trial court.

The jury's verdict was for plaintiff for the total loss of the sight of his eye and for pain, headaches and nervousness equal to 20 per cent loss of an arm. A judgment was entered accordingly, from which the Commission appealed.

The Commission moved for a nonsuit and for a directed verdict, the denial of which formed the basis of its Assignments of Error No. I and No. II, which

we will treat together. The motion for the directed verdict, following closely in the language of the motion for nonsuit, is as follows:

"At this time, your Honor, the defendant desires to interpose a motion directing a verdict in its favor; first, as to the demand for eighty degrees for the loss of the eye, on the ground and for the reason that not only did their own expert, but the defendant's expert have both testified that the eye was industrially blind at the time of the accident and had been for a considerable time prior thereto, and he is asking to recover the loss of an industrially blind eye; secondly, the motion as to the demand for ninety-six degrees for pain and nervousness upon the ground and for the reason that there can be no recovery for pain as such, and there is not one scintilla of evidence in here that the pain has ever kept him from any gainful occupation, the one at which he earns his livelihood, and also that the nervousness—trying to get recovery for the nervousness is an attempt to collect twice for the same accident."

Under Assignment of Error No. I, it is asserted: "There can be no recovery for the loss of sight of an eye that is already industrially blind." It is argued that the two doctors in the case, Dr. Canfield Beattie, plaintiff's expert witness, and Dr. E. Merle Taylor, defendant's expert and sole witness, both testified that plaintiff was "industrially blind" in his left eye prior to the accident, and, such being the case, it is urged that there could be no aggravation. On the argument, counsel for the Commission, in answer to a question propounded by a member of the court, said: "There is no definition, your Honor, of industrial blindness. It is—it varies in each particular state, there is no degree—it just means that your eye is useless for ordinary industrial purposes."

It is true that both doctors testified that the plaintiff's left eye was industrially blind before the accident, that being their conclusion; however, Dr. Beattie testified as follows:

"A Well, he had—he had vision in the left eye. The extent to which that vision could be improved I couldn't say, but he had some useful vision to the eye because, even without the glasses he could count fingers out at about three feet, which was—
"" * * *

"A (continuing) Well, of course, that—such a vision is not a very accurate vision, not what you consider good vision, but it is a very useful vision if it is the only vision you have. I mean it allows you to get around in daylight, see doorways, see steps, protruding objects, walls or things pro— sticking out from a wall and, providing there is adequate illumination, it is considered a useful vision. It is not a vision that you could do a job with that required any skill or was difficult but it is a very useful vision."

Plaintiff himself testified as follows:

"Q Now, between that time and the time you had this accident in 1947 what was your vision in that eye?

"A Well, I thought it was pretty good.

"Q That is a pretty general term. Can you tell us what you could see and what trouble, if any, you had with it, what you could use it for?

"A Just a few days before that happened I was walking around down in the basement with my hand over my right eye. Seemed like it was getting better and I remarked to my wife about it, that I was quite pleased with it because, frankly, at first we were disappointed. We thought when you got a cataract operation your eye was going to be as good as it ever was, but when it wasn't—and then

when it seemed like it was improving, maybe it was just my idea. But I was naturally quite happy about it.

"Q  Well, how far could you see with it and what could you see and what could you use it for?  Can you give the jury a little idea?

"A  I could see you but you weren't straight up and down.

"Q  Well, could you count or could you see doorways and see where you were going, things like that?

"A  Sure.

"Q  What was the use—

"A  I could saw shingles; I could tell when there was a knot in the block.  That carriage runs on my left side here (indicating).

"Q  Was it of any use to you in driving your automobile?

"A  I could see that saw.  That saw is about fifty inches and runs seventeen hundred revolutions just running right toward you (indicating). The shingles come off right alongside of you."

Let us now look to the law on the question.  Under the Workmen's Compensation Act of this state, an injured workman is compensated for the total loss of the sight of an eye without regard to whether or not the eye was perfect prior to the accident.  Section 102-1760, O. C. L. A. defines permanent partial disability as " * * * the loss of one eye * * * ", and the workman under the Act is awarded 80 degrees "for the permanent and complete loss of the sight of one eye."

Only one Oregon case has been cited which has any particular bearing on the subject at hand, and that is *Chebot v. State Industrial Accident Commission,*

106 Or. 660, 212 P. 792. In that case, the workman lost the sight of an eye in an accident, and as a result thereof, his other eye became weak and inflamed, and as claimed by him, causing him to become incapacitated for performing any useful work or occupation. He contended that he was entitled under the Act to be awarded for the permanent and complete loss of the sight of his other eye. The evidence disclosed that he had some use of the remaining eye. The Commission asserted in that case that since plaintiff had some sight left in his eye, he should be compensated on the basis of a partial loss of the sight of the eye. The court upheld the Commission's position and said:

> "The reported cases tend to support the contention of the Attorney General. Those cases indicate that where any useful vision remains, the disability is partial, and an award of compensation for total disability is not authorized."

The court further said:

> "The commission, under the authority of the statute, may require plaintiff to submit himself to the examination and treatment of eye specialists from time to time, and if under such treatment the useful vision of plaintiff's left eye increases, a modification of the award to conform to the improved condition and diminished disability may be made, after reasonable notice to plaintiff; or if a total loss of eyesight shall develop, compensation may be arranged and an award made for total disability."

The Commission cites five cases from other jurisdictions to sustain its theory. We have read all of them and find that they are not applicable to the case at bar as the facts in four of these cases were that prior to the accidents the claimants involved had no practical use of their eyes. The fifth case cited, *Prze-*

*kop v. Ramapo Ajax Corporation et al.,* 214 App. Div. 512, 212 N. Y. S. 426, was based on a statute which defined the loss of binocular vision. On the other hand, Oregon has no such statute. No other Oregon case cited or found by our search touches on the point in question; however, there are authorities from other jurisdictions bearing on this question which are collected in the annotations in 73 A. L. R. 706; 99 A. L. R. 1498; 142 A. L. R. 822.

In the case of *Eagle-Picher Mining & Smelting Co. v. Murphy,* 169 Okla. 180, 35 P. (2d) 952, we find that Oklahoma has a statute similar to the Oregon statute in regard to the partial loss of vision, and it was there held that where, prior to the injury, the claimant had partial loss of vision of the eye but there was vision sufficient to the satisfactory performance of labor, the claimant would be entitled to an award for loss of an eye. In *Wildman v. Pennsylvania Department of Highways et al.,* 157 Pa. Super. 301, 43 A. (2d) 342, the court, in dealing with a question quite similar to the one involved in this case held that it was not a question whether or not plaintiff was industrially blind before the accident, or had no reading vision prior to the accident, but whether he had lost the use of the eye for all practical purposes. See *Diaz v. Jones & Laughlin Steel Corp.,* 155 Pa. Super. 177, 38 A. (2d) 387.

In the case of *Ames v. Sanitary District No. 1 of Lancaster County,* 140 Neb. 879, 2 N. W. (2d) 530, a case where there was a complete loss of sight, the court held that an award was not based upon the amount of vision prior to the accident and said:

"It is to be observed that our statutes nowhere define the characteristics and powers of the normal

eye. The obvious intent thereof is to compensate and indemnify the owner of an eye capable of industrial use and injured in industry to the full extent of his industrial loss occasioned thereby. This seems in accord with the better reasoned cases.''

The court further refers to a New York case as follows:

"Thus, in Hobertis v. Columbia Shirt Co., 186 App. Div. 397, 173 N. Y. S. 606, 607, a case involving facts which disclosed that the claimant lost the use of an eye, and that she had at all times been nearsighted, having not to exceed 50 per cent. vision, and where appellant's claim was that such claimant should only be allowed for the loss of one-half vision, the New York court answered the appellant's contention thus: 'The statute does not provide that the loss of the use of an eye shall be compensated by an award based upon the amount of vision which existed previous to the accident, whether it be 50 per cent. or 80 per cent. of vision lost. It awards specific compensation for the loss of an eye. It is matter of common knowledge that very few persons have complete and perfect vision. The claimant was working with defective vision. So far as appears, her work was entirely satisfactory to her employer, at least so far as the wages she received. The wages received by her must be considered her wage-earning capacity with defective vision. She lost the use of her eye, such as she had, and is entitled to compensation therefor, based upon her earning capacity.' ''

See Schneider on Workmen's Compensation, § 409.

■ There is evidence in the instant case that claimant had sight in his left eye for all practical purposes, and as said by Dr. Beattie: "It is considered useful vision. It is not a vision that you could do a job with that

required any skill or is difficult, but it is a very useful vision."

The evidence is devoid of claimant's ever having received compensation for the loss of partial vision of his eye, and in this case, the jury having found that claimant had lost the entire sight of his eye, claimant would be entitled to an award by the Commission of 100 per cent.

■■ Defendant's second proposition is that there can be no recovery for chronic pain and nervousness as such in industrial accident cases. In the case of *Lindeman v. State Industrial Accident Commission*, 183 Or. 245, 250, 192 P. (2d) 732, this court, in analyzing the Workmen's Compensation Act involved, stated as follows:

"The Oregon Workmen's Compensation Act provides primarily for three types of compensation to be paid to employees covered by the act (or to their beneficiaries or dependents in case of death) for injuries arising out of and in the course of their employment. They are:

"(1) Compensation for disability, dependent as to amount upon whether the injury produces a permanent total, a temporary total, or a temporary partial disability. §§ 102-1756, 102-1758, and 102-1759, O. C. L. A.

"(2) Compensation is stipulated amounts for loss of some part of the body, such as an arm, a leg, or an eye, and 'other cases of injury resulting in permanent partial disability'. § 102-1760, O. C. L. A.

"(3) Compensation for death. § 102-1755, 102-1757 and 102-1761, O. C. L. A.

"1. The statute provides no compensation for physical pain or discomfort. It is limited to the

> loss of earning ability. The loss of capacity to earn is the basis upon which compensation should be based."

It is not the intention of the law to compensate for pain, suffering or nervousness in and of themselves, but the disabling effects of such may be considered in determining the disabling effect of any particular injury. The court therefore erred in submitting this question to the jury.

■ The third point raised by defendant is that the court erred in instructing the jury " *   *   * that the testimony of experts is to be received and considered with narrow scrutiny and with much caution." The exception taken at the trial is as follows: "I wish to add a further exception to your Honor's ruling as to expert witnesses, because that was not called for, there was an expert witness on both sides." It has been held by this court many times that to enable one to take advantage of error in the giving of instructions, the party must point out specifically the grounds of his exception. Had defendant in this case excepted to such instruction on the ground that the court was invading the province of the jury, since the credibility of witnesses is exclusively a jury question, such an exception would have been well taken. The trial court has no business commenting on the evidence, and we disapprove of such practices; however, the exception taken was not sufficient to call to the court's attention the point now raised.

■ The next point raised by defendant is that the court erred in not instructing the jury by defining the meaning of "aggravation." Defendant did not submit to the court an instruction on this matter and can not now complain.

There are several other assignments of error set out in the brief but not argued by the Commission. We have considered these assignments and find that they are without merit and, therefore, will not be discussed.

The judgment of the lower court will be modified to the extent that the award for pain, headaches and nervousness will be eliminated, and the judgment otherwise will be affirmed.