Argued February 24, affirmed March 20, 1978

BOWMAN, *Appellant,*
*v.*
OREGON TRANSFER COMPANY,
*Respondent—Cross-Appellant.*
(No. A 77 08 11159, CA 9259)
576 P2d 27

Jay Edwards, Portland, filed the brief for appellant.

Scott M. Kelley, Portland, argued the cause for respondent—cross-appellant. With him on the brief was Donald O. Costello, Portland.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

This workers' compensation case presents only fact questions.

Since this court was established in 1969 it has reviewed de novo, *see Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), *rev den* (1971), literally hundreds of workers' compensation cases—most of which, like the case at bar—presented only questions of fact. The vast majority of those decisions have been by opinions setting out in more or less detail the facts and the reasons for our decision.

In *Sarty v. Forney,* 12 Or App 251, 506 P2d 535 (1973), a case dealing with child custody, we said:

"A detailed opinion by an appellate court primarily serves three functions: (1) it tells the litigants why the court decides the appeal as it does; (2) it demonstrates to the members of the court and to the litigants that the court has reviewed the record or those portions of it relevant to the issues raised by the litigants, and that it has considered the issues raised in light of relevant statutory and case law; and (3) it provides guidance to bench and bar in their collective effort to resolve future problems of like nature.

"The last function is probably less important when the opinion is that of an intermediate appellate court than when it is the opinion of a court of last resort.

"There are several reasons, advanced with increasing frequency, for not publishing detailed opinions in all cases * * *." 12 Or App at 252-53.

Since *Sarty* we have decided many child custody appeals without detailed opinion and for several years have disposed of a substantial number of criminal appeals without written opinion.

Another factor not mentioned in *Sarty* is that the increase in the number of appeals filed in Oregon in the past few years has been so explosive that this court in its present size cannot produce written opinions in traditional form in even the majority of the appeals

brought to it. And, arguably, if it could, the precedential value of its opinions would be weakened because the sheer volume would in most instances make it uneconomic for lawyers to sift through them. We have come to the time when it is literally essential to dispose of an even larger percentage of appeals without detailed opinion.

In 1970, the first full year of existence of the Court of Appeals, 577 appeals were filed and 155 were dismissed short of hearing on the merits, leaving 422 cases for decision on the merits by a court of five judges. In 1978, based on filings for year-to-date, over 3,000 appeals will be brought before this court, and assuming that the percentage of dismissals remains constant, some 2,250 of those will require decision on the merits. Although we now have ten judges, the increase in the decisions required per judge per year has increased from approximately 84 in 1970 to a projected 225 in 1978. Even if we assume that as many as one-third of the appeals is so limited in scope as to not require any significant amount of judicial time for disposition, 1,500 cases would remain to be decided— or 150 per year per judge.

In 1968 when the Supreme Court asked the legislature to create the Court of Appeals to relieve the load upon the court, the uncontradicted testimony adduced at the legislative hearings was that an appellate judge on a collegiate court could not be expected to produce an average of more than 30 to 35 reasonably well-constructed opinions per year, and that when the figure got markedly above that average quality usually started to suffer. In 1977, we averaged 92 signed majority opinions per judge. This was in addition to numerous per curiam, dissenting and concurring opinions. The obvious conclusion is that unless this court undergoes expansion far beyond ten members—a mixed blessing as many jurisdictions have learned—it cannot issue detailed opinions in all cases, even assuming that such is advisable.

As pointed out in *Hannan v. Good Samaritan Hosp., supra,* in deciding fact questions de novo in workers' compensation cases we are essentially performing what has traditionally been considered a jury function. Generally, juries are not required—in fact are generally not permitted—to give reasons for their decisions. Reliance on the integrity of juries has been preserved by collegiality rather than by statements of reasons. In selecting additional categories of cases in which we generally will not issue opinions, workers' compensation cases presenting only fact questions represent an obvious choice. The litigants will already have had two opinions in most cases—that of the referee and of the Workers' Compensation Board. Purely factual decisions, unless the issues are unique, are not of substantial precedential value for bench or bar. As for demonstrating that the court has adequately reviewed the record, bench, bar and public must rely on the collegial structure of the court and the integrity of its individual members in insuring that collegiality is true in fact as well as in theory.

As even a cursory review of the activities of other jurisdictions—state and federal—will reveal, neither the problem nor the partial solution outlined here is unique to Oregon. However, with rare exceptions, unlike many other jurisdictions, the Court of Appeals allows oral argument in almost every case. And, unlike some other jurisdictions, the members of a panel of the Court of Appeals hearing an appeal read the lawyers' briefs, rather than reading only summaries of those briefs prepared by professional staff. *See* R. Bird, *The Hidden Judiciary,* 17 The Judges' Journal 4 (Winter 1978). What the future will bring in appellate practice and procedure only time will tell. However, we presently have no intention of abandoning or modifying the direct access of lawyers to judges provided by these procedures.

Turning to the case at bar, the sole questions are whether claimant is permanently and totally disabled

and, if not, the extent of his partial disability. We agree with the triers of fact below that he is not totally disabled and we agree with the partial disability award made by the Board and affirmed by the trial court.