Argued and submitted November 12, 1980,
rules upheld in part; invalidated in part March 2,
reconsideration denied April 16,
petition for review denied May 19, 1981 (291 Or 9)

OREGON STATE EMPLOYES ASSOCIATION et al,
*Petitioners,*

*v.*

WORKERS' COMPENSATION DEPARTMENT,
*Respondent.*

(No. WCD Admin. Order 4-1980, CA 17682)

624 P2d 1078

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

Petitioners challenge the validity of rules issued by the Director of the Workers' Compensation Department, (director) Oregon Administrative Rules, Chapter 436, Division 65: Claims Evaluation and Determination, effective April 1, 1980. The petition is brought pursuant to ORS 183.400.[1] The only basis asserted for the invalidity of the rules is that they exceed the statutory authority of the director. ORS 183.400(4)(b).

The rules were promulgated pursuant to ORS 656.726(3). Petitioners' primary concern is with subsection (f) which provides that the director may:

"Provide general guidelines for the evaluation of permanent disabilities *in accordance with existing law.*" (Emphasis supplied.)[2]

Petitioners' contention is that the rules are not "in accordance with existing law" and are, therefore, beyond the authority delegated to the director.

We agree with petitioner that the delegation of rule-making authority is limited by the final phrase in a way that it might not otherwise be. The department does not appear to contend otherwise. Rules promulgated pursuant to this section must conform to the case law as well as the statutes existing at the time the rules were adopted.

Before addressing the rules we note that petitioners challenge all of the rules, OAR 436-65-000 through 436-65-998. This involves some 43 pages of extremely detailed rules regarding evaluation of both scheduled and unscheduled disability. Petitioners tell us in their brief that "The rules are comprehensive; it would be impossible to detail each and every regulation as it relates to existing Oregon law." Petitioners, however, apparently expect that

---

[1] ORS 183.400 provides in part:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. * * *"

[2] This subsection was added by the 1979 legislature. It accompanied repeal of the authority to provide such guidelines which had previously been delegated to the Workers' Compensation Board. *See* former ORS 656.726(2).

we will do that for them. We decline to do so. *See Kristensen v. Eugene Planning Comm.,* 24 Or App 131, 544 P2d 591 (1976). Petitioners have, however, pointed out several "examples" of the problems they perceive with the rules as adopted. We will consider those specific rules to which petitioners have raised specific objection, and no others.

Petitioners note what they term as "three major areas of concern where the rules contravene Oregon Law:" (1) the preamble which states the purpose of the regulations; (2) the guidelines for rating of permanent *scheduled* disability; and (3) the guidelines for rating permanent *unscheduled* disability. We will deal with their contentions in that order.

I

■     OAR 436-65-002 states:

"These rules provide uniform guidelines for disability evaluation under the Workers' Compensation Act, *based on medically authoritative and objective findings.*" (emphasis supplied).

Petitioners' objection to this statement of purpose is that it manifests an intent to undermine existing case law, which recognizes the validity of subjective as well as objective factors in determining disability. We do not read this statement of purpose, however, as indicating that subjective factors will not be considered in evaluating disability. Although factors such as pain may be considered subjective, the statement of purpose does not, on its face, prohibit consideration of such factors.[3] If the regulations are applied in such a manner as to conflict with existing law, they may then be confronted on that basis.

II

■     Petitioners contend that OAR 436-65-405 through 436-65-575 provide for evaluation of scheduled disability in a manner inconsistent with existing law. One of petitioners' contentions is that the rules adopted use "graphs and charts" to establish the extent of scheduled disabilities. Petitioners contend that this is contrary to the intent

_____

[3] *Walker v. Compensation Department,* 248 Or 195, 432 P2d 1018 (1967), recognized that disabling pain may be considered in determining disability from a particular injury.

expressed by the legislature when it passed the rule-making authority of the director. This argument is based on the fact that there was at one point before the legislature a suggested version of what is now ORS 656.726(3)(f) which specifically provided that the director could use "charts, graphs, statistical tables and other analysis devices" to promote uniform disability determinations.[4] From the fact that the language finally adopted provided only for "general guidelines" for evaluation of disability, petitioners reason that the director is forbidden to use charts, graphs and the like.

■ Even assuming that the rules at issue here amount to the use of graphs and charts, petitioners' reasoning is not persuasive. An amendment to a statute may be defeated for many reasons. The failure of the legislature to pass a particular proposal is of dubious value in interpreting the legislation which was passed. *Springfield Ed. Assn. v. Sch. Dist.,* 24 Or App 751, 547 P2d 647 (1976), *modified,* 25 Or App 407, 549 P2d 1141 (1976).

■ Petitioners further argue that the procedure in the rules which set specific disability awards for specific conditions is not found in existing law. As an example petitioners point out that nothing in existing law would prevent a claimant who has suffered a complete loss of wrist joint dorsiflexion from receiving an award of 100 percent of a forearm if the complete loss of wrist joint dorsiflexion caused the *particular* claimant to lose the total use of his forearm. Petitioners' contention seems to be that because no case or statute now sets the limits imposed by the regulations, those regulations, are not "in accordance with existing law."

---

[4] The proposal was as follows:

[The director may:]

"(f) Establish a comprehensive and uniform rating system for all disabilities resulting from compensable injuries. Such a system may include the utilization of charts, graphs, statistical tables and other analysis devices that will promote uniformity and equitability in disability determinations."

OAR 436-65-520(1)[5] does limit the award for a loss to wrist joint dorsiflexion (the inability to turn the wrist upward) to 10 percent of the forearm. However, plaintiff ignores all the other rules which provide for percentage of loss for other forearm disabilities related to the wrist. For example, OAR 436-65-520(2) provides:

> "(2) Dorsiflexion ankylosis (stiffening or fixation of a joint): Ankylosis in wrist joint dorsiflexion represents a minimum of 25% loss of the forearm, if in the position of function * * *. This allowance increases proportionally to 90% loss of the forearm for ankylosis in full dorsiflexion * * *, or to 30% loss of the forearm for ankylosis in the neutral position * * *."

Other provisions are made for palmar flexion, palmar flexion ankylosis, radial deviation, radial deviation ankylosis, ulnar deviation, ulnar deviation ankylosis, and pronation or supination. The rule then states:

> "When the pathology resulting in these losses arises in the proximal radio-ulnar or radio-humeral articulations, the elbow should be considered involved, and the rating made in terms of loss of function of the arm."

And further, OAR 436-65-524 provides for the conversion of hand and forearm values to an arm value. It provides:

> "100% loss of a hand or forearm represents a maximum of 80% loss of an arm, or a proportion thereof for less than a complete loss."

We believe these rules would not prevent a claimant from receiving a greater award than the 10 percent provided for loss of wrist joint dorsiflexion if it results in other disabling conditions.

■   Petitioners' argument that the rules on evaluation of scheduled disabilities do not allow consideration of the individual in each case is unpersuasive. The basic criteria for rating scheduled disability is defined by statute, ORS

---

[5] OAR 436-65-520(1) provides:

"Dorsiflexion. For the complete loss of wrist joint dorsiflexion, a maximum of 10% loss of the forearm is allowed."

656.214(2),[6] and reiterated in the regulations, OAR 436-65-500(2): "The criteria for rating of disability shall be the permanent loss of use of function of the injured member due to the industrial injury." The regulations which follow do what the rulemaking authorization allows, they set guidelines for rating that loss of use or function which may be applied to each individual situation presented.

Further, if the director were given authority only to state that which has already been stated by statutory or case law, the authority to make rules would be meaningless. As we stated above, we agree that the director's rulemaking authority has been somewhat limited in that rules adopted must not contravene existing law, both statutory and case law. That does not mean that the rules adopted may not provide the "guidelines" that the statute expressly authorizes. The rules regarding loss of wrist joint dorsiflexion, loss of thumb joint flexion (OAR 436-65-505(1)(a)) and other rules mentioned by petitioners which set maximum limits on disability awards, are specific. They are, however, guidelines to the evaluation of disability and are within the director's delegated authority.

■ Petitioners challenge two other specific regulations for scheduled disability evaluation as contrary to existing law. First, they contend that OAR 436-65-575 regarding visual loss applies a vision concept rejected by the Supreme Court in *Russell v. SAIF,* 281 Or 353, 574 P2d 653 (1978). A careful reading of the rules shows that is simply not so. OAR 436-65-575(1) states:

"Work-related visual loss is rated with reference to central visual acuity, integrity of the visual fields, and ocular motility. Other losses to the visual system are rated according to Section 65-645(3) below."

The remainder of OAR 436-65-575 provides guildelines for

---

[6] The statute states:

"When permanent partial disability results from an injury, the criteria for the rating of disability shall be the permanent loss of use or function of the injured member due to the industrial injury. * * *"

the losses specified. OAR 436-65-645(3), concerns un-scheduled disability, and provides for other types of visual losses not included as scheduled disability. These include the types of visual losses which were involved in *Russell v. SAIF, supra,* and which were considered by the Supreme Court to be unscheduled disability. The rules are entirely consistent with that Supreme Court decision.

■      The other scheduled disability rule specifically challenged by petitioners is OAR 436-65-525(2), which pro-vides for scheduled disability for the loss of use of the shoulder, as a percentage of loss of the arm.[7] As petitioners point out, this is inconsistent with *Audas v. Galaxie,* 2 Or App 520, 467 P2d 654, *rev den* (1970), in which this court held that loss of use of a shoulder is an unscheduled loss. *See also Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), *rev den* (1971); *Foster v. State Acc. Ins. Fund,* 4 Or App 50, 474 P2d 20, 476 P2d 933 (1970), *modified on other grounds* 259 Or 86, 485 P2d 407 (1971). We find that this rule is not in accordance with existing law and is, therefore, beyond the statutory author-ity of the director. OAR 436-65-525(2) is declared to be invalid.

---

[7] The regulation states in full:

"(2) Shoulder joint.

"(a) Forward elevation. For the complete loss of shoulder joint forward elevation, a maximum of 16% loss of the arm is allowed.

"(b) Forward elevation ankylosis. Shoulder joint ankylosis in forward elevation represents a minimum of 40% loss of the arm, if in the position of function (30°). This allowance increases proportionally to 100% loss of the arm for ankylosis in full forward elevation (150°), or to 60% loss of the arm for ankylosis in the neutral position (0°).

"(c) Backward elevation. For the complete loss of shoulder joint back-ward elevation a maximum of 4% loss of the arm is allowed.

"(d) Backward elevation ankylosis. Shoulder joint ankylosis in backward elevation represents a minimum of 60% loss of the arm, if in the neutral position (0°). This allowance increases proportionally to 100% loss of the arm for ankylosis in full backward elevation (40°).

"(e) Abduction. For the complete loss of shoulder joint abduction, a maximum of 17% loss of the arm is allowed.

## III

■    Petitioners' third challenge is to the rules providing guidelines for the rating of unscheduled permanent disability, OAR 436-65-600 *et seq.* Petitioners point out two specific rules which they contend contravene existing Oregon law. The first is OAR 436-65-600(2)(b).[8] Petitioners contend that under the rule factors other than physical impairment *may* be considered in evaluating unscheduled permanent disability while the law currently *requires* that such factors be considered. This contention is plainly wrong. The rule provides in part:

"Social/vocational considerations. These are additional factors *to be included* in the evaluation of lost earning

"(f) Abduction ankylosis. Shoulder joint ankylosis in abduction represents a minimum of 40% loss of the arm, if in the position of function (45°). This allowance increases proportionally to 100% loss of the arm for ankylosis in full abduction (150°), or to 60% loss of the arm for ankylosis in the neutral position (0°).

"(g) Adduction. For the complete loss of shoulder joint adduction, a maximum of 3% loss of the arm is allowed.

"(h) Adduction ankylosis. Shoulder joint ankylosis in adduction represents a minimum of 60% loss of the arm, if in the neutral position (0°). This allowance increases proportionally to 100% loss of the arm for ankylosis in full adduction (30°).

"(i) Internal rotation. For the complete loss of shoulder joint internal rotation, a maximum of 6% loss of the arm is allowed.

"(j) Internal rotation ankylosis. Shoulder joint ankylosis in internal rotation represents a minimum of 60% loss of the arm; if in the neutral position (0°). This allowance increases proportionally to 100% loss of the arm for ankylosis in full internal rotation (40°).

"(k) External rotation. For the complete loss of shoulder joint external rotation, a maximum of 14% loss of the arm is allowed.

"(l) External rotation ankylosis. Shoulder joint ankylosis in external rotation represents a minimum of 40% loss of the arm, if in the position of function (20°). This allowance increases proportionally to 100% loss of the arm for ankylosis in full external rotation (90°), or to 60% loss of the arm for ankylosis in the neutral position (0°)."

[8] OAR 436-65-600(2)(b) provides:

"Social/vocational considerations. These are additional factors to be included in the evaluation of lost earning capacity. Depending on the circumstances of the individual worker, they may include: age, education, work experience, adaptability to less strenuous physical labor market. For each social or vocational factor a range of expected impact on disability is given. The range begins at zero impact. Those findings which tend to reduce the disabling effects of the injury are given negative (-) values. Those findings which tend to increase the disabling effects of the injury are given positive () values."

capacity. Depending on the circumstances of the individual worker, they may include: age, education, work experience, adaptability to less strenuous labor, mental capacity, emotional and psychological findings, and findings in the labor market. * * *" (emphasis suppled).

This rule does not contravene existing law.

■    Petitioners' last contention is that the plus and minus system of calculation established by OAR 436-65-601 is a formulaic chart and graph method which is not found in existing law. OAR 436-65-601 provides:

"65-601    ASSEMBLING THE FACTORS RELATING TO LOSS OF EARNING CAPACITY

"(1)    Determine the basic value which represents the impairment of the whole person, according to the appropriate findings and classifications described in Sections 65-609 through 65-675 below. If impairment is present, this will always be a positive () value.

"(2)    Identify the appropriate social/vocational factors applicable to the injured worker, according to the relevant findings decribed in Section 65-602 through 65-608 below. Depending on their impact on the worker's disability, these may be determined to represent either positive (), negative (-), or zero values.

"(3)    In two separate calculations,

"(a)    *combine* together the positive () values found in (1) and (2) above, and then

"(b)    *combine* together the negative (-) values found in (2) above.

"(4)    The final negative (-) combination value is then taken as a percentage of the final positive () combination value, and is subtracted therefrom. The result, when rounded to the nearest five percent, represents the percentage of lost earning capacity to be compensated."

This is followed by a breakdown into plus or minus values for the factors listed, such as age, education, and so on.

Petitioners' contention here again seems to be that such an evaluation system with this weighing of factors is not found in existing law. Again our response is that the director is authorized to do more than compile existing law. Petitioners contend that it is inflexible and prevents personal evaluation of each individual. We cannot say that the system of evaluation is invalid on its face. If the rules are applied in such a manner as to be inconsistent with the

statutory or case law regarding permanent unscheduled disability they may be challenged on that basis at that time.

## IV

■      Petitioners make one final contention which does not fit into any of the three categories outlined. They contend that OAR 436-65-225(2) is contrary to ORS 656.319(2). The rule and the statute apply to different procedures. OAR 436-65-225(2) provides:

> "If the order on re-evaluation terminates total disability, the claimant has thirty days from the mailing date to request a hearing."

ORS 656.319 provides for a time limit within which a hearing must be requested for obtaining compensation in the first instance, but OAR 436-65-225 provides for a time limit within which a hearing must be requested after the Evaluation Division has terminated permanent total disability.

OAR 436-65-225(2) does conflict, however, with ORS 656.283(1) which provides:

> "Subject to ORS 656.319, any party or the director may *at any time* request a hearing on any question concerning a claim." (Emphasis supplied.)[9]

A request by a claimant for a hearing following termination of permanent total disability after reevaluation under OAR 436-65-225(1) would come under ORS 656.283(1), which specifically provides that such requests may be made "at any time."

■      Although the director has authority to make rules required in administering compensation, ORS 656.726, it is fundamental that such rules must be adopted to carry out the provisions of the enabling legislation, not to change them. *See Univ. of Ore. Coop. v. Dept. of Revenue,* 273 Or 539, 542 P2d 900 (1975); *Joint Council of Teamsters v. OLCC,* 46 Or App 135, 610 P2d 1250 (1980). Where the statute specifically allows a request for a hearing to be

---

[9] The term "claim" is defined as

> "* * * a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge."

made at any time, the director may not require the request be made within 30 days. The 30 day time limit established in OAR 436-65-225(2) is therefore invalid.

In summary, we find that the rules that petitioners have specifically challenged are valid with the exception of OAR 436-65-225(2) and 436-65-525(2), which are declared to be invalid.