Argued and submitted October 3, 1983, remanded March 6, 1984

In the Matter of the Compensation
of Norman S. Harwell, Claimant.

HARWELL,
*Petitioner on Review,*

*v.*

ARGONAUT INSURANCE COMPANY et al,
*Respondents on Review.*

(WCB No. 79-08902; CA A25835; SC 29603)

678 P2d 1202

Quintin B. Estell, Albany, argued the cause for petitioner on review. With him on the brief was Emmons, Kyle, Kropp, Kryger & Alexander, P.C., Albany.

LaVonne Reimer, Portland, argued the cause for respondents on review. With her on the brief were Robert E. Babcock and Lindsay, Hart, Neil & Weigler, Portland.

CAMPBELL, J.

Carson, J., concurred and filed an opinion.

## CAMPBELL, J.

In this workers' compensation case the claimant suffered a compensable injury to his low back. The referee awarded him 60 percent unscheduled permanent partial disability. The Workers' Compensation Board decreased the award to 15 percent. The claimant appealed to the Court of Appeals which affirmed without opinion. The claimant petitioned this court for review, claiming that the Board's order was in error because it

"ignored the credible testimony of claimant and his wife concerning such subjective impairment aspects as disabling pain and * * * limited the physical impairment aspect of evaluating permanent disability to the '* * * objective physical findings.'"

If we had determined that the Court of Appeals affirmed after an evaluation of the facts pursuant to the correct rule of law, we would not have allowed the petition for review. We allowed review because the "Court of Appeals may have affirmed the Board as the result of an erroneous interpretation of the law." *Gettman v. SAIF,* 289 Or 609, 612-13, 616 P2d 473 (1980).[1]

■ We do not review the evidence de novo. *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979). We accept the following facts which were undisputed in the administrative record.

Claimant was 38 years old at the time of the Workers' Compensation Board hearing. He had worked as a welder, carpenter, housepainter, driver, and in a variety of other occupations. He completed two years of college. He injured his back twice before this injury. The injury with which we are concerned happened in September, 1978 while claimant was employed by defendant, Big Sky Ranch, as a bale wagon operator. The bale wagon was not working correctly, and

---

[1] For example, where the Court of Appeals affirms with a citation to *Bowman v. Oregon Transfer Company,* 33 Or App 241, 576 P2d 27 (1978), or *Hoag v. Duraflake,* 37 Or App 103, 585 P2d 1149 (1978), it is a strong indication that the case was affirmed by exercise of the Court of Appeals fact finding function.

The determination that the Court of Appeals affirmed on an issue of law is simplified where the Court of Appeals cites a statute or a prior case decided on an issue of law. *See, e.g., Rogers v. SAIF,* 289 Or 633, 616 P2d 485 (1980). However, the absence of such a signal does not preclude review.

claimant moved the 90-150 pound hay bales by hand. The compensability of the claim is not now at issue. The sole issue before the Workers' Compensation Board was the extent of unscheduled permanent partial disability.

Until this injury claimant had worked at jobs which required medium to heavy lifting. After the injury, the medical advice was that he should do no more than light lifting. Claimant received conservative treatment, with no hospitalization or surgery. Treating physicians have uniformly diagnosed claimant's condition as a chronic low back strain, but differed on the extent. Claimant received vocational rehabilitation assistance, and was cooperative in attempting to locate employment. The referee found no evidence of malingering. Claimant is free from non-industrial psychological problems that could affect his disability status. However, the prolonged administrative confusion concerning his claim[2] may have magnified his subjective complaints. His condition is medically stationary. A decreased portion of the job market is open to him since the September, 1978 injury.

Claimant testified that since the injury he has pain in his back and legs. The pain is not constant, but is felt during and after exertion, and is worse some days than others. Claimant testified that on "bad days" almost any movement causes pain.

The claimant's wife corroborated his testimony. She further testified that he had trouble sleeping, avoided lifting, and soaked each morning in the bathtub to relax his muscles.

The Board entered an order in which it reviewed the medical reports and found:

"Based on the guidelines set forth in OAR 436-65-600 et seq., we find based on the objective physical findings that claimant has a 5% impairment rating. Claimant is 38 years of age (0 value), with a high school education and two years of college (−10 value). Claimant's injury occurred while employed as a baleswaggon operator (SVP 4, impact +3). He is now restricted to light work whereas his previous work was classified as medium (+10 value). Combining claimant's education, work background and limitations, claimant has at

---

[2] After claimant filed this claim for his back injury, he filed another claim for an unrelated injury to his hand. The claims were consolidated. At least one hearing was postponed due to surgery on claimant's hand. The claim for his hand was settled.

least 54% of the labor market still open to him (−25 value). After combining all of the above factors based on the above cited guidelines we conclude claimant would be adequately compensated for his loss of wage earning capacity due to this injury by an award of 48 degrees for 15% unscheduled disability."

Claimant contends that the Board, contrary to Oregon law, mechanically followed its guidelines and ignored the credible testimony concerning the disabling pain he suffered.

Before we reach the claimant's assignment of error we must consider: (1) whether pain which reduces a claimant's earning capacity *must* be considered in establishing the extent of his unscheduled permanent partial disability, and (2) at what point in the compensation scheme does the factfinder consider pain to determine if it reduces the claimant's earning capacity.

We have previously discussed pain in permanent partial disability cases. In *Wilson v. State Ind. Acc. Comm.,* 189 Or 114, 124, 219 P2d 138 (1950), we said:

"It is not the intention of the law to compensate for pain, suffering or nervousness in and of themselves, but the disabling effects of such *may* be considered in determining the disabling effect of any particular injury." (Emphasis added.)

*See also, Walker v. Compensation Department,* 248 Or 195, 196, 432 P2d 1018 (1967). Both cases interpreted predecessor statutes to the present ORS 656.214(5), which provides:

"(5)    In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria [sic] for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, training, skills and work experience. The number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the worker [sic] before such injury and without such disability. For the purpose of this subsection, the value of each degree of disability is $100."[3]

---

[3] The predecessor statutes did not include the first two sentences, but did include the substance of the third sentence.

While it is not expressly mentioned by the legislature, disabling pain affects an injured worker's ability to obtain and hold gainful employment. While both the *Wilson* and the *Walker* cases use the permissive term "may," it was not our intention to give the factfinder discretion to determine whether disabling pain should be considered. When pain has disabling effects, they *must* be considered in establishing awards for unscheduled permanent partial disability.

■ Board decisions on awards of unscheduled permanent partial disability are determinations of the extent of a claimant's loss of earning capacity due to a compensable injury. This procedure is sometimes aided by use of guidelines, OAR 436-65-600 *et seq.*[4] These regulations divide the decisional process into three steps: (1) setting the impairment rating;[5] (2) modifying this rating by relevant factors[6] and obtaining a percentage;[7] and (3) determining the final award expressed in degrees of disability. We agree with a prior Court of Appeals decision that steps (2) and (3) are distinct from each other, and that the figure obtained by use of the guidelines is not a substitute for a "fair assessment" of the percentage of disability. *Fraijo v. Fred N. Bay News Co.,* 59 Or App 260, 269, 650 P2d 1019 (1982).

■ We hold that pain is to be considered in setting the "impairment rating." This is true whether the factfinder uses the guidelines or not. If the present guidelines are used, then pain is to be considered in step one. If the guidelines are not used, then pain shall be considered when the impairment to the body function is determined. Pain is compensable only if it results in impairment of the function of the body and therefore pain must be considered when that determination is

---

[4] The legislative history supports the Court of Appeals approval of the flexible use of these guidelines as part of the evaluation system, *OSEA v. Workers' Compensation Dept.,* 51 Or App 55, 64-65, 624 P2d 1078 (1981). Minutes, Senate Committee on Labor, Consumer and Business Affairs, April 12, 1979; Minutes, House Labor Committee, June 20, 1979.

[5] This is done pursuant to OAR 436-65-609 to 675 (percentage of the "whole person" impaired), *see* OAR 436-65-600(2)(a).

[6] These factors are listed in OAR 436-65-602 to 608 and include age, education, work experience, adaptability, mental capacity, emotional and psychological impact, and labor market availability.

[7] This is done pursuant to the formula in OAR 436-65-601, *see* OAR 436-65-600(2)(b). For an example of this sort of computation, *see Fraijo v. Fred N. Bay News Co.,* 59 Or App 260, 268, 650 P2d 1019 (1982).

made. If pain does not impair function, it is not to be considered. Only if pain causes impairment must the factfinder turn to the question of whether that amount of impairment results in loss of earning capacity.

It appears from the previously quoted portion of the Board's order that it used the guidelines to "find based on the objective physical findings that claimant has a 5% impairment rating."[8]

The claimant argues that to reach the "5% impairment rating," the Board followed OAR 436-65-600(2)(a) which in part provides:

"Injury-related impairment of the whole person must be documented in the medical record."

It is the claimant's position that the Board followed its guidelines in a mechanical fashion, considering the medical records only and ignoring the testimony of the claimant and his wife as to subjective complaints of pain.[9]

The claimant further argues that unless "medical record" under OAR 436-65-600(2)(a) is construed to include his and his wife's testimony under oath at the hearing, the rule is contrary to law. ORS 656.283 provides that the claimant is entitled to a hearing. If the testimony of the claimant and his witnesses is not to be considered, then the referee would be required to consider only the medical records and a hearing would be unnecessary. A claimant is a competent witness to testify as to the pain he suffers and his impaired ability to

---

[8] It appears that the Board in arriving at the "5% impairment rating" may have used OAR 436-65-620(2) (SPINAL RANGES OF MOTION):

"* * * * *

"(2) Thoracolumbar region.

"(d) Right or left rotation. For the complete loss of thoracolumbar or low back right or left rotation, a maximum of 5% impairment of the whole person is allowed."

We are unable to find any reference to "pain" in OAR 436-65-600 et seq.

[9] In his assignment of error, the claimant says that the Board ignored the "credible testimony of the claimant and his wife." The question of whether the testimony of any witness is "credible" is solely within the province of the factfinder. The finder of fact is not required to believe the testimony of a witness because it is uncontradicted. Reasonable minds might draw different inferences from the testimony. *Rickard v. Ellis*, 230 Or 46, 368 P2d 396 (1962).

perform physical labor. *Uris v. Compensation Department,* 247 Or 420, 427, 427 P2d 753, 430 P2d 861 (1967).

■ The claimant's interpretation of how the Board arrived at its result may or may not be correct. We cannot tell from the record. Our calculation using the complicated mathematical guidelines provides a modified unscheduled permanent partial disability of 11.70 percent. A strict application of the guidelines requires "rounding to nearest five percent." OAR 436-65-601(4). Instead of rounding down to 10 percent, the Board granted an award of 15 percent disability. The Board may have found that the use of steps one and two of its guidelines did not compensate the claimant for his loss of earning capacity adequately by reason of his impairment including pain and therefore added the additional percentage to reach the total of 15 percent.

The Board's order also quoted a conclusion from three physicians of the Orthopaedic Consultants, who examined the claimant. After agreeing that the loss of function from the back injury was minimal, they stated:

"In our opinion, this man's continuing subjective complaints have been magnified to a great extent as the result of the prolonged administrative confusion which has occurred in this instance."

This may be an indication that the Board considered the claimant's subjective complaints of pain and either rejected them or gave them a minimal rating as a part of impairment.

Another possibility is that all physicians in recommending that the claimant return to a lighter form of work considered his subjective complaints of pain without saying so directly. In this manner, the Board may have considered the claimant's subjective complaints of pain after they had been filtered through the physicians as "preliminary" factfinders.

On the other hand, the referee, the Board, or the Court of Appeals could not be faulted if they read our cases of *Walker v. Compensation Department, supra,* and *Wilson v. State Ind. Acc. Comm., supra,* as giving the factfinder discretion to consider or disregard pain. It may be that they did not give any consideration to pain in this case. Now that we have clarified the rules of the game, it is only fair that we remand this case for reconsideration.

This case is remanded directly to the Board: (1) to determine if its previous decision considered the claimant's subjective complaints of pain, (2) if the complaints were not considered, to proceed to make that consideration, and (3) to consider if OAR 436-65-600 *et seq* are correct in view of this opinion.[10]

Remanded to the Workers' Compensation Board.

**CARSON, J.**, concurring.

I write separately for the purpose of setting forth what I consider to be a clearer statement of the role of pain in workers' compensation cases involving unscheduled, permanent partial disability, although not in contradiction of the majority opinion.

Two fundamental concepts of the law of workers' compensation control the role of pain in this case. The first concept is that pain, in and of itself, is not compensable in workers' compensation cases. *Walker v. Compensation Department,* 248 Or 195, 196, 432 P2d 1018 (1967); *Wilson v. State Ind. Acc. Comm.,* 189 Or 114, 124, 219 P2d 138 (1950); *Lindeman v. State Ind. Acc. Comm.,* 183 Or 245, 250, 192 P2d 732 (1948); 2A Larson, Workmen's Compensation Law § 65.51(c). The second concept is that, in unscheduled, permanent partial disability cases, the disability for which compensation is awarded is the permanent loss of earning capacity due to the compensable injury. ORS 656.214(5). Thus, as noted by the majority, it is only the *effect* of pain that may result in compensation.

From the statutes, caselaw, and literature, I perceive three levels of pain in cases of unscheduled, permanent partial disability: Pain, pain that impairs, and pain that results in compensable disability.

### 1. Pain.

This first level in the hierarchy of pain frequently is referred to as "pain" or "pain and suffering"

---

[10] We also note that ORS 656.214(5) requires that the present disability be compared with the worker's condition before the injury. It directs the consideration to a comparison of this particular worker's condition before and after the injury, while OAR 436-65-600(2)(a), discussing impairment, refers to "the average functional capacity normally present in *an un*injured worker." (Emphasis added.) This regulation, which directs a comparison of the injured worker's post-injury condition with the pre-injury condition of some hypothetical worker is seemingly at odds with the statute.

and is a generic reference to a sensation of hurting most often found in the usual tort case. It is an injury for which damages may be awarded, both for past and for future pain. As noted above, this level does not result in any compensation in workers' compensation cases.

## 2. Pain that Impairs.

The next level in the examination of pain is pain that impairs function of the body or its parts. It should be pointed out that the impairment may be a contributing factor to, or an indication of, disability, but not necessarily so. For instance, it is conceivable that one would have pain which produces a minor impairment or loss of function that has no effect upon one's earning capacity. No compensation may be awarded for this level of pain, absent impairment of earning capacity.

## 3. Pain that Results in Compensable Disability.

It is this level of pain for which compensation may be awarded. Thus, pain that results in a permanent loss in one's ability to obtain and hold gainful employment in the broad field of general occupations (earning capacity) is disabling pain and compensation may be awarded.

It can be seen that pain is compensable not for what it is (pain), or for what it causes (impairment), but for the effect it has on earning capacity. Thus, using a labeling adjective such as "disabling" in describing pain at any other than the third level blurs the analysis. In fact, it short-circuits it.

Another impediment to the clear application of pain in the workers' compensation context is the legislatively-chosen verb "consider" (or "take into consideration"). It is a word of varying meanings.[1] Thus, with the wide sweep in meaning from "examine" or "look at" to "calculate," the

---

[1] Webster's New International Dictionary, 2nd Edition (1934), listed, in part, the following definitions for "consider":

"*Transitive:* 1. To look at attentively; to inspect; to examine.

"2. To fix the mind on; hence, to think on with care; to ponder; to study; to meditate on; also, to bear in mind.

"3. To estimate; calculate. * * *

"*Intransitive:* 1. To look attentively. * * * to reflect; to deliberate. * * *"

judicial move to a mandatory requirement ("must") from a discretionary requirement ("may"), as done in the majority opinion, accomplishes little, particularly, if "consider" merely means "to look at." But all of this is irrelevant if the approach spelled out above were followed. In unscheduled, permanent partial disability cases, I would prefer a rule that directs that pain always would be "considered" by the factfinder but only if the factfinder determines that there is pain and that pain causes impairment and that impairment effects a permanent loss of earning capacity, would there be compensation.